J-S66007-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN RANDOLPH SLOAN, | |
| Appellant | No. 1745 WDA 2016 |

Appeal from the PCRA Order Entered November 1, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013842-2011

BEFORE:  BENDER, P.J.E., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            FILED DECEMBER 21, 2017

Appellant, John Randolph Sloan, appeals from the post-conviction court's November 1, 2016 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.[1]  We affirm.

In a prior Pa.R.A.P. 1925(a) opinion, the trial court described the factual background of this case as follows:

> On September 18, 2011, Sonya Smith was watching television inside the second floor bedroom of her residence … in the Penn Hills section of Allegheny County.  Smith and Appellant's co-defendant, Mark Martin, had been involved in an intimate relationship since 2006, but became estranged in May 2011. Appellant grew up in the same neighborhood as Smith and had contact with Smith during the course of her relationship with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although the PCRA court dated its order as October 31, 2016, it was not entered on the docket until November 1, 2016.

Martin, as Appellant and Martin were friends. Martin was familiar with Smith's residence from staying there during their relationship. Smith had locked all of the doors to her house before retiring to her bedroom. At approximately 3:45 A.M.[,] Smith was awakened by the voices of Appellant and Martin outside of her home below her bedroom window. Smith called the police when she heard prying noises at the kitchen window, which was directly below her bedroom. Appellant and Martin, who were unable to gain entry through the locked doors, broke through a window pane in the kitchen door to gain entry to Smith's home through that door.

Shortly thereafter, Appellant, wearing black sweatpants, a black sweatshirt, gloves, a Halloween mask and a paintball mask, entered Smith's bedroom holding a 9mm firearm. Appellant ordered Smith to lie on her bed facedown and struck Smith in the head and arms multiple times with the firearm. Martin, who was wearing light colored clothes and a ski mask, entered Smith's bedroom shortly after Appellant. Both men straddled Smith and struck her multiple times in the arms and head; Appellant with the 9mm firearm and Martin with a heavy object, most likely a crowbar. Smith sustained a total of nine broken bones in her arms, bruising on her arms and back, and a concussion. As a result of the attack[,] Smith spent several days in the hospital and one month in a nursing facility for rehabilitation.

Following the assault, the two men fled the residence. Martin left first, exiting through the sliding glass door in the dining room, a door that because of its "stickiness" could only be opened by someone familiar with the premises. At the same time[,] Penn Hills police officers arrived on [the] scene in response to Smith's 911 call. As Officer Ronald Como approached Smith's residence[,] he saw Martin jog across the street, away from Smith's home. Officer Richard Pine approached from the opposite direction and witnessed Appellant, a short, black male with a distinct beard, exiting out the side kitchen door of Smith's residence. Appellant ran towards the rear[-]wooded area of the home. Officer Pine gave a description of the man and his direction of travel over the radio. As Appellant fled[,] he discarded the paintball mask and hat that he wore during the assault in the wooded area behind Smith's home. Appellant continued to flee the scene, and discarded the Halloween mask outside a nearby residence as he made his way to Frankstown Road.

Penn Hills Sergeant Patrick Manning, responding to Smith's residence, observed Appellant jogging on Frankstown Road as the sergeant traveled toward the Smith residence. Appellant was less than one-half mile away from Smith's residence when he was observed by Sergeant Manning. Sergeant Manning, based on the information broadcast by officers Pine and Como, stopped and made contact with Appellant. Appellant, who had no identification on him, was wearing black sweatpants, a black sweatshirt, had a distinctive beard, and had mud and grass stains on his shoes. Appellant told Sergeant Manning that he had been in a domestic altercation nearby and was out "blowing off steam." Appellant was taken to the police station for interview and identification purposes. At that time[,] Smith was hospitalized and not available for interviewing purposes[;] consequently Appellant, once identified, was released from custody pending further investigation.

A paintball mask and hat were recovered from the wooded area behind Smith's residence, and the Halloween mask was recovered from the neighbor's yard.... The hat and paintball mask were tested and the DNA on both items was a match to Appellant. At trial[,] Smith identified the Halloween and paintball masks as the masks worn by Appellant during the assault. Additionally, Smith identified Appellant by his voice and his bowlegged gait....

Trial Court Rule 1925(a) Opinion (TCO), 10/21/2014, at 5-8 (internal citations to record and footnote omitted).

A jury trial took place on October 15-23, 2013.[2] Important to the issues presently on appeal, on October 16, 2013, after the parties had finished picking the jury, Appellant made an oral motion to sever his trial from his co-defendant's, Martin, trial. The trial court denied Appellant's motion, and the case proceeded to a joint trial.

_____

[2] We note that a prior jury trial occurred on April 9-13, 2012, and ended in a mistrial when that jury was unable to reach a verdict.

Following the joint trial, the jury convicted Appellant of aggravated assault, 18 Pa.C.S. § 2702(a)(1), burglary, 18 Pa.C.S. § 3502(c)(1), and conspiracy to commit aggravated assault, 18 Pa.C.S. § 903(c). Appellant received an aggregate sentence of twelve to twenty-four years' imprisonment. Thereafter, he filed a post-sentence motion, claiming, inter alia, that he did not receive a fair trial because the trial court denied his request for a severance of trials. The trial court denied his post-sentence motion, and Appellant then filed a timely appeal to this Court. In a court-ordered Pa.R.A.P. 1925(b) statement, Appellant again alleged that the trial court erred when it denied his motion to sever. In response, in its Rule 1925(a) opinion, the trial court stated that Appellant had waived this issue because "[w]hile it was noted on Appellant's information that his motion to sever was denied on October 16, 2013, nothing in the record indicates that a formal written motion to sever was filed, nor was a hearing, argument, or decision to deny the severance transcribed." TCO at 14. As a result, the trial court explained that it could not "know on what basis Appellant sought a severance from co-defendant Mark Martin." Id.

On June 22, 2015, in an unpublished memorandum, we affirmed Appellant's judgment of sentence. Commonwealth v. Sloan, 122 A.3d 1140 (Pa. Super. 2015) (unpublished memorandum). Notably, Appellant did not raise his severance claim to this Court.

On August 4, 2015, Appellant filed a pro se PCRA petition. The PCRA court appointed counsel to represent Appellant. On February 26, 2016,

- 4 -

Appellant filed an amended PCRA petition, arguing, among other things, that his direct appeal counsel was ineffective because he failed to investigate and uncover that Appellant's trial counsel, in fact, had placed the motion to sever on the record.[3] As a result, Appellant contended that "but for the ineffectiveness of [his direct appeal] counsel, the trial court's decision to deny the Motion to Sever would have been subject to appellate review." See Appellant's Amended PCRA Petition, 2/26/2016, at 12 (unnumbered pages). After the Commonwealth filed an answer, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition, and

_____

[3] Appellant gave the following explanation as to why the motion to sever did not previously appear in the record:

> After speaking to trial counsel, who was adamant that his motion to sever on behalf of [Appellant] was put on the record, [PCRA] counsel contacted [the] court reporter…. After speaking with [the court reporter] on several occasions and having her review the proceeding, she was able to locate a part of the transcript that had not been transcribed into the trial transcripts, because the motion, which was on the record, was heard in the midst of several other cases that [the trial court] was presiding over on October 16, 2013. [The court reporter] promptly transcribed the motion and provided counsel with a copy for review. Said transcript revealed that [Appellant's trial counsel] provided an argument on the record to sever the case based upon evidence that was to be heard which related only to [Appellant's] co-defendant, Martin. [Trial counsel] argued that this evidence that was set to be introduced, which included witnesses whose testimony would delve further than just the facts surrounding the incident in which [Appellant] was charged with, would be prejudicial to [Appellant].

Appellant's Amended PCRA Petition, 2/26/2016, at 10 (unnumbered pages).

Appellant filed an objection in response. On November 1, 2016, the PCRA court entered an order denying Appellant's PCRA petition.

On November 16, 2016, Appellant filed a timely notice of appeal to this Court. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Presently, Appellant raises the following issues for our review:

> 1) Whether prior appellate counsel was ineffective for failing to raise a meritorious claim on direct appeal regarding the motion to sever, which in the circumstances of the particular case, so undermined the truth-determining process that no adjudication of guilt or innocence could have taken place.
>
> 2) Whether there was a violation of the Constitution of the Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

Appellant's Brief at 5 (unnecessary capitalization omitted).

Our standard of review regarding an order denying post-conviction relief is whether the findings of the PCRA court are "supported by the record and free of legal error." Commonwealth v. Albrecht, 994 A.2d 1091, 1093 (Pa. 2010) (citations omitted). With respect to Appellant's ineffectiveness claims,

> [an a]ppellant is required to plead and prove by a preponderance of the evidence ... that the conviction or sentence resulted from ... ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. It is the ineffectiveness claim, not the underlying error at trial, which is reviewed. To establish ineffectiveness, [the] appellant must show: (1) the claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would

have been different. [An a]ppellant bears the burden of proving all three prongs, failure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two.

Commonwealth v. Robinson, 877 A.2d 433, 439 (Pa. 2005) (internal citations and quotation marks omitted).

In his first issue, Appellant argues that his direct appeal counsel was "ineffective for his failure to address the trial court's decision to deny … Appellant's Motion to Sever on appeal[,] which resulted in Appellant's appellate rights on the issue being waived." Appellant's Brief at 12. Consequently, Appellant claims to have suffered prejudice because he could not seek appellate review of the trial court's decision on his motion to sever. Id. In addition, he claims that he "suffered severe prejudice from being tried along with his co-defendant, Martin." Id.

"The decision whether to sever trials of co-defendants is within the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of that discretion." Commonwealth v. Bond, 985 A.2d 810, 824 (Pa. 2009) (citation omitted). "The determinative factor is whether the defendant has been prejudiced by the trial court's refusal to sever his trial, and it is the burden of the defendant to establish such prejudice." Id. Further, our Supreme Court has explained:

Where, as here, the crimes charged against each defendant arise out of the same facts and virtually all of the same evidence is applicable to both defendants, this Court, as well as the United States Supreme Court, have indicated a preference to encourage joint trials to conserve resources, promote judicial economy, and enhance fairness to the defendants:

> It would impair both the efficiency and the fairness of the criminal justice system to require … that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

> Given this preference, the burden is on defendants to show a real potential for prejudice rather than mere speculation. Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice. Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.

Commonwealth v. Rainey, 928 A.2d 215, 231-32 (Pa. 2007) (internal citations and quotation marks omitted). Further, "[w]here … the defendants have been charged with conspiracy, joint, rather than separate, trials are preferred." See, e.g., Commonwealth v. Marinelli, 690 A.2d 203, 212-13 (Pa. 1997) (citation omitted).

In the case sub judice, Appellant maintains that "he suffered significant prejudice from being tried along with Martin as evidence was presented at trial that would not have been admissible if Appellant were tried separate." Appellant's Brief at 16. Specifically, he states that "the evidence introduced, including the Commonwealth's entry of several phone calls … created … sort of an element to [the] case that is unique to Mark Martin, but not unique to …

Appellant." Id. (citation to record, internal quotations marks, and original brackets omitted). Moreover, according to Appellant, "[t]here was also significant evidence that was admitted against Martin that had no relation to the case involving Appellant[,]" which "included two ... witnesses ... who saw Martin as he was seeking shelter in their residences while police were searching for suspects on the night the crime occurred." Id. at 16-17.

Notwithstanding, Appellant does not elaborate on the content of the above-mentioned evidence, let alone where to find it in the record.[4] See Pa.R.A.P. 2119(c) ("If reference is made to ... evidence, ... or any other matter

_____

[4] Our review of Appellant's motion to sever, post-sentence motion, and initial Pa.R.A.P. 1925(b) statement also provide little insight. Arguably, the most detailed description of the supposedly prejudicial evidence appears in his oral motion to sever. In moving to sever the trials, Appellant's trial counsel claimed:

> With regard to the jail calls for Mr. Martin, [the Commonwealth] has informed me of the discussions that were held yesterday after we were done picking the jury, and it seems that there is now an element to the Commonwealth versus Mark Martin case for this retrial that was not as present for the first trial; namely, a bunch of phone calls about working on his alibi, about working on his witnesses, which has created sort of an element to this case that is unique to Mark Martin, but not unique to [Appellant]. It has nothing to do with [Appellant].
>
> Because of that — Your Honor may see where I'm going with this — we feel the case is stronger against Mark Martin.
>
> We feel trying it with [Appellant] will prejudice the case against [him] now since there's a deviation from the common facts of just the witnesses and about what happened that night, and I would ask Your Honor and make a formal motion to sever the case.

N.T., 10/16/2013, at 4-5.

appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears[.]"). Moreover, Appellant does not develop an argument as to why this evidence prejudiced him. See Commonwealth v. Hardy, 918 A.2d 766, 771 (Pa. Super. 2007) ("The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. ... This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citations omitted). Accordingly, we deem Appellant's argument waived.

Nevertheless, even if not waived, we would determine Appellant's claim lacks arguable merit. From what we can glean from our examination of the record, Appellant complains of phone calls Martin made from jail to purportedly establish an alibi and solicit others to hurt Sonya Smith, as well as testimony from two witnesses who encountered Martin seeking shelter as police searched for suspects on the day in question. Appellant claims that such evidence created a "stronger" case against Martin, and would not have been admissible if Appellant had been tried separately. See Appellant's Brief at 15; N.T., 10/16/2013, at 4. This argument is unpersuasive.

As the trial court discerned, "Appellant and co-defendant Mark Martin were charged with participating in the same series of acts, namely the burglary of Sonya Smith's home and the brutal assault, and both defendants were charged with conspiracy." TCO at 15. Therefore, because Appellant and Martin faced conspiracy charges, a joint trial was appropriate and "preferred."

Marinelli, 690 A.2d at 212-13 (citation omitted). In addition, Appellant does not state that he and Martin's defenses were antagonistic and irreconcilable. See Rainey, 928 A.2d at 232 ("Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice.") (citation omitted). Indeed, in her closing argument, Martin's counsel did not even remotely implicate Appellant; instead, she primarily focused on attacking Sonya Smith's credibility and pointing out the inconsistencies in her testimony. See, e.g., N.T., 10/22/2013, at 774, 776-78. While Appellant may believe that the Commonwealth's case against Martin was "stronger," we observe that "the mere fact that one defendant might have a better chance of acquittal if tried separately is an insufficient ground to require severance." Commonwealth v. Jones, 668 A.2d 491, 501 (Pa. 1995) (citation omitted). We also note that the trial court instructed the jury to "consider the evidence as to each defendant, and decide the cases separately, of course, in the sense [that] the Commonwealth must prove each and every element against each defendant before you can find either of them guilty." N.T., 10/22/2013, at 856. Finally, as stated supra, the joint trial spanned from October 15-23, 2013, involved over twenty witnesses, and — based on our cursory assessment of the trial transcripts — mostly included evidence regarding the common crimes for which Appellant and Martin were charged, i.e., the burglary and assault of Sonya Smith. Thus, the joint trial promoted judicial economy.

Based on the foregoing, we would not determine that the trial court abused its discretion in denying Appellant's motion for severance. While we acknowledge that Appellant's counsel likely could have pursued this issue on direct appeal if he had practiced greater diligence, Appellant's claim lacks merit and would not have warranted relief. Accordingly, even if not waived, Appellant's ineffectiveness argument would fail.

In his second issue, Appellant argues that "[t]he ineffectiveness of counsel in failing to pursue the denial of Appellant's Motion to Sever on appeal denied Appellant his right to effective representation in this case." Appellant's Brief at 17. Thus, according to Appellant, "[t]he apparent ineffectiveness of appellate counsel violated Appellant's rights afforded to him by the Sixth Amendment of the United States Constitution." Id. at 17-18. Because we would not consider Appellant's counsel ineffective for the reasons discussed above, we likewise would conclude that Appellant's constitutional rights under the Sixth Amendment were not violated on this basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/21/2017