J-S16040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANIEL JOSE RODRIGUEZ :
:
Appellant : No. 1169 MDA 2024

Appeal from the Judgment of Sentence Entered April 16, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000742-2023

BEFORE: LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: AUGUST 5, 2025**

Daniel Jose Rodriguez ("Rodriguez") appeals from the judgment of sentence imposed following his convictions of possession of a firearm by a prohibited person, possession with intent to deliver a controlled substance ("PWID"), conspiracy to commit PWID, possession of a controlled substance, and possession of drug paraphernalia.[1] We affirm.

The trial court cogently set forth the factual history underlying Rodriguez's convictions as follows:

In December of 2022, Criminal Investigator Timothy Morris of the City of Reading Police Department (hereinafter referred to as "Investigator Morris") began an investigation into . . . Rodriguez . . . , a man with the street name "Double D", when he received some information that he was selling multiple types of narcotics

---

[1] 18 Pa.C.S.A. §§ 903(a)(1), 6105(a)(1); 35 P.S. § 780-113(a)(16), (30), (32).

out of 507 North 14th Street. He also was provided with a cell phone number which was determined to belong to Rodriguez.

Using this cell phone number Investigator Morris arranged for three controlled buys. Prior to each controlled buy, Investigator Morris met with his confidential source and had him contact Rodriguez using the phone number registered to Rodriguez. The confidential source would make contact, then go to 507 North 14th Street to purchase the drugs. Prior to going to purchase the drugs the confidential source would be searched to ensure he had no drugs on him prior to going into the home. Investigator Morris would maintain physical surveillance on the confidential informant as he entered and exited the home. Each time he entered the home he went in through the basement door. After leaving the address he would meet up with Investigator Morris at a predetermined location and provide him with the marijuana he had purchased in the home. The money that would be exchanged for the marijuana would be discussed during the phone conversation prior to each buy. All three controlled buys used the same process. The same confidential source was used for all three controlled buys and the controlled buys took place from December 2022 into January 2023.

After the controlled buys, Investigator Morris obtained a search warrant for 507 North 14th Street, the body of Avery Putt ("Putt"), the body of . . . Rodriguez, as well as two cell phones. The search warrant was executed on January 18, 2023. While conducting the search the police found a plethora of drugs and drug paraphernalia, including but not limited to cocaine, methamphetamine, fentanyl, marijuana, scales, a press used to manufacture drugs, vacuum seals, stacks of U.S. currency, as well as [two] firearms. Inside the home police found Putt, [Jennifer] Lewis [("Lewis")], Rodriguez and a minor child. Putt, Lewis, and the minor were located on the second floor of the home in a storge area toward the back of the home and Rodriguez was located on the second floor in the hallway. When Rodriguez was found he was wearing shorts, no shirt, and no shoes. After the discovery of the drugs and drug paraphernalia in the home police arrested Rodriguez, Putt, and Lewis. When police went to take Rodriguez out of the home, he asked to grab his sweatshirt which was . . . in the basement.

Trial Court Opinion, 10/30/24, at 2-3 (citations to transcript omitted).

Rodriguez's issues both address the trial court's ruling on a motion *in limine* he filed immediately before trial began on Tuesday, January 16, 2024. In his motion, Rodriguez requested the exclusion of evidence for violation of the Commonwealth's discovery obligations under Rule of Criminal Procedure 573. At oral argument on the motion prior to the selection of the jury, Rodriguez informed the court that he "received . . . discovery . . . over the weekend." N.T. (Trial), Vol. I, at 7. The prosecutor responded that she "did not have this information until Friday," when the Commonwealth "received a phone call from who would be considered an expert, Justin Morrow with the Forensic Service Unit. He . . . indicated that upon his analysis and comparison that . . . Rodriguez's fingerprint did come back on two items." *Id*. Specifically, his fingerprints were discovered on a plate and the magazine of a firearm. The prosecutor then "immediately emailed [defense counsel] and provided him with that information and told him that a report would be forthcoming." *Id*. at 8. She received that report sometime "over the weekend," and "immediately forwarded it to" defense counsel. *Id*. Rodriguez then filed his motion on the first business day following the three-day weekend.[2]

Rodriguez sought to exclude "any fingerprint reports or results" and any expert testimony on that topic due to the late disclosure. *Id*. at 7. Alternatively, Rodriguez asked "for a continuance" to "review this with [his] expert." *Id*. at 8. The trial court denied both requests on the basis that the

___

[2] The courthouse was closed on Monday, January 15, 2024, to observe Martin Luther King Jr. Day.

Commonwealth did not violate its discovery obligations since, as Rodriguez conceded, the prosecutor turned the material over immediately upon receipt. *See id*. ("I want to make it clear I don't believe that madam prosecutor has withheld this from me.  It [just] came to her as well.").

At trial, the Commonwealth presented evidence as outlined by the trial court above.  The Commonwealth's expert testified that regarding the match of Rodriguez's fingerprints to those left on items in the home at 507 North 14th Street.  The jury convicted Rodriguez of the above-referenced offenses.

On March 12, 2024, the trial court imposed the aggregate sentence of twenty-eight to fifty-seven years of incarceration.  Rodriguez filed a timely post-sentence motion for reconsideration on March 19,2024.  The trial court entered an amended judgment of sentence on April 16, 2024, and later held a hearing on Rodriguez's claim that the trial court imposed an excessive sentence.  The trial court denied the balance of the post-sentence motion on June 28, 2024.  Rodriguez thereafter filed a timely notice of appeal.[3] Rodriguez and the trial court both complied with Pa.R.A.P. 1925.

Rodriguez presents two issues for our review.

> 1.  Did the trial court commit an abuse of discretion and err as a matter of law in denying [Rodriguez]'s motion *in limine* to preclude the fingerprint evidence because the Commonwealth violated

---

[3] While the trial court denied the post-sentence motion on June 28, 2024, the trial court Clerk of Courts served the document on July 2, 2024.  Rodriguez's August 1, 2024 notice of appeal was therefore timely.  *See* Pa.R.A.P. 108(a)(1) (stating that for purposes of calculating periods of time the date of entry of an order "shall be the day the clerk of the court . . . mails or delivers copies of the order to the parties").

- 4 -

Pa.R.Crim.P. 573(B)(1) and its introduction violated [Rodriguez]'s state and federal constitutional rights to a fair trial?

2. Did the trial court commit an abuse of discretion and err as a matter of law in denying trial counsel's request for a continuance of the trial because of the delayed discovery disclosure resulting in prejudice to [Rodriguez]?

Rodriguez's Brief at 3.

Both of Rodriguez's issues address the trial court's ruling that the Commonwealth did not, as a matter of law, violate any discovery obligations. Whether Rule 573 applies is a pure question of law, which we review *de novo*. *See Commonwealth v. Lopez*, 280 A.3d 887, 894 (Pa. 2022) ("The proper interpretation of a rule of criminal procedure is a question of law, for which the standard of review is *de novo* and the scope of review is plenary."). As to remedies for discovery violations, the following principles apply to our review:

> If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E) . . . . The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. *Commonwealth v. Johnson*, . . . 727 A.2d 1089 ([Pa.] 1999). Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). *Id.* (citing *Commonwealth v. Jones*, . . . 668 A.2d 491 ([Pa.] 1995)). A defendant seeking relief from a discovery violation must demonstrate prejudice. *Id.* (citing *Commonwealth v. Counterman*, . . . 719 A.2d 284 ([Pa.] 1998)). A violation of discovery "does not automatically entitle appellant to a new trial." *Jones*, 668 A.2d at 513 (Pa. 1995). Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure. *Id.* (citing *Commonwealth v. Chambers*, 599 A.2d 630, 636–38 ([Pa.] 1991) (no error in denial of mistrial motion for untimely disclosure where appellant cannot demonstrate prejudice)).

*Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003).

Rodriguez argues that the trial court erred as a matter of law in determining that the remedial provisions of Rule 573 were not implicated. He concedes that the rule by its plain text does not require the Commonwealth to "have scientific testing performed at any particular time[.]" Rodriguez's Brief at 22. However, he observes that "[t]rial by ambush is contrary to the spirit and letter of those rules and cannot be condoned." *Id*. at 16 (citation omitted). He submits that the Commonwealth ambushed him with the fingerprint evidence and expert reports, stressing that the Commonwealth could and should have obtained that material much sooner with proper diligence. He cites the trial testimony of the officer who conducted the fingerprint analysis; the officer stated that he received an email the week before trial asking him to test the evidence. *See* N.T. (Trial), Vol. I, at 269 ("[Q.] When did the government reach out to you to process this? When did the government ask you to start doing the fingerprinting collection? A. I got an email last week."). Therefore, the Commonwealth "was dilatory in processing the fingerprint evidence and failing to turn over the reports until the eve of trial." Rodriguez's Brief at 20.[4]

---

[4] At times, Rodriguez distinguishes the "fingerprint cards," referring to the physical manifestation of the fingerprints, from the expert's testing and opinion that the fingerprints matched Rodriguez's prints. However, the only plausible value of such evidence is the expert analysis linking the fingerprints to a particular individual, and Rodriguez does not suggest that he would have tested those fingerprints himself.

Rodriguez's issues differ only with respect to the trial court's failure to grant either of his requested remedies. His first issue claims that the trial court should have excluded the fingerprint evidence and expert testimony because the Commonwealth's failure to have the evidence tested in a timely fashion "was intentionally and recklessly undertaken to deprive [him] of a fair trial." *Id*. at 21-22. He argues that "[a] continuance would have been an inappropriate remedy since it would have resulted in a significant additional period of pre-trial confinement[.]" *Id*. at 22. Accordingly, the trial court should have excluded the evidence. As it failed to do so, Rodriguez asserts that this Court should "vacate the judgment of sentence and find that the prosecutorial misconduct applies for double jeopardy purposes." *Id*.

In his second issue, Rodriguez argues that the trial court should have granted his alternative request to continue the trial for consultation with an expert, as the typical remedy for late disclosure is a continuance to review the material.

The trial court concluded that preclusion was not warranted on the basis that no discovery violation occurred as "discovery is ongoing" and the Commonwealth immediately supplied the information and report to Rodriguez. N.T. (Trial), Vol. I, at 8. The trial court reiterated this conclusion in its opinion. Trial Court Opinion, 10/30/24, at 13 ("[S]ince discovery is ongoing and the fingerprint reports and results were not withheld by the Commonwealth but were in fact turned over as soon as they were received, Rodriguez is not entitled to relief.").

The threshold issue before this Court is whether the trial court erred in finding that the Commonwealth did not violate its discovery obligations. For the following reasons, we agree with Rodriguez that the trial court erred by concluding that the prosecutor's immediate disclosure of the fingerprint evidence and expert report *per se* precluded a finding of a violation of Rule 573.

The Rules of Criminal Procedure require the Commonwealth to disclose discovery on an ongoing basis and requires both parties to fulfill their discovery obligations throughout trial. **See** Pa.R.Crim.P. 573(D). The following provisions require mandatory disclosure of the fingerprint evidence and expert report:

> (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;
>
> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; . . . .

Pa.R.Crim.P. 573(B)(1)(e)–(f).

There is no dispute that the Commonwealth immediately alerted Rodriguez of its intent to offer expert testimony upon learning that their expert matched Rodriguez's fingerprints to two items. The trial court's conclusion that this was sufficient is facially supported with respect to the expert report, as the relevant provisions of Rule 573 do not require the Commonwealth to

generate expert reports in any particular timeframe.[5]  In response, Rodriguez
relies on precedents discussing "ambushing" an adversarial party with late
discovery violates the spirit if not the letter of the rule.  The cases cited by
Rodriguez, however, concern situations in which the Commonwealth was in
possession of the evidence but failed to turn it over.  For example, in
***Commonwealth v. Hanford***, 937 A.2d 1094, 1096 (Pa. Super. 2007), during
cross-examination of a defense witness, the Commonwealth introduced a
recorded jailhouse conversation between the witness and the defendant.  We
held that the trial court erred by not excluding the evidence, as the
Commonwealth ambushed Hanford with the recordings.  The Commonwealth
"could reasonably have predicted" that the availability of the recordings would
have factored into the defense's strategy of calling the witness or changing
the line of questioning.  ***Id***. at 1101.

Rodriguez also discusses ***Commonwealth v. Gonzalez***, 313 A.3d 154
(Pa. Super. 2024) (unpublished memorandum), in which the Commonwealth
appealed a trial court order precluding an expert's opinion.[6]  There, the

---

[5] Our Supreme Court has asked the Criminal Procedure Rules Committee to address this issue.  ***See Commonwealth v. Dunn***, 300 A.3d 324, 336–37 (Pa. 2023) (Opinion in Support of Affirmance) (Mundy, J.) ("We decline to prescribe a specific time frame for Rule 573 disclosures in this opinion, but refer this matter to our Criminal Procedure Rules Committee to consider whether adoption of an express time period or some alternative framework would clarify any uncertainty in the rule.").  We address the ***Dunn*** case in more detail within this memorandum.

[6] Rodriguez fails to note that the case is unpublished and therefore not precedential.  ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

Commonwealth disclosed two weeks before trial an expert report setting forth a Pennsylvania State Trooper's conclusion that the defendant possessed drugs with an intent to deliver and thus not for personal use. The trial court excluded the report, and the Commonwealth appealed.

The **Gonzalez** case is similar in that it involves the Commonwealth's failure to timely disclose an expert report. However, the legal issues are dissimilar. The Commonwealth as appellant in **Gonzalez** did not claim that the trial court committed an error of law in applying Rule 573's remedial provisions. Instead, it claimed that two weeks "was far enough in advance of trial that there was no prejudice" and "that the trial court abused its discretion when it precluded [the] expert report . . . rather than granting a continuance." **Id**. at \*11. Accordingly, the **Gonzalez** decision did not address the predicate question of whether the trial court's discretionary authority was implicated at all.

As that issue presents a pure question of law and Rodriguez has consistently framed his argument in terms of a trial by ambush, we address our Supreme Court's equally divided decision in **Commonwealth v. Dunn**, 300 A.3d 324 (Pa. 2023) (*per curiam*). In **Dunn**, the Commonwealth emailed counsel for Ryan Dunn ("Dunn") at 4:25 p.m., the day before his jury trial for sexual abuse crimes was set to commence. The email advised Dunn that the prosecution intended to call an expert to opine on the general behavior of sexual victims and included a document discussing the general parameters of the expert's expected testimony. Dunn filed a motion arguing that the

- 10 -

document was insufficient and seeking to compel the preparation of a compliant expert report.

On appeal, this Court agreed with the trial court that "Rule 573 does not specifically address the timing of disclosures and merely provides potential remedies for noncompliance." ***Commonwealth v. Dunn***, 245 A.3d 1098 (Pa. Super. 2020) (unpublished memorandum at *12). We therefore affirmed the trial court's order. Our Supreme Court granted Dunn's petition for allowance of appeal, and all six Justices agreed that, as a matter of law, the trial court erred in finding no discovery violation. However, the Court split evenly on whether Dunn was entitled to a new trial.

Justice Mundy, joined in full by Justice Brobson and in part by Chief Justice Todd, authored the lead opinion in support of affirmance ("OISA"). Justice Mundy explained that "this case does not concern the admissibility of [the] expert testimony . . . but only whether the trial court erred in allowing the Commonwealth to introduce the testimony in light of its belated disclosure." ***Dunn***, 300 A.3d at 335 (OISA) (Mundy, J.). Justice Mundy explained that Rule 573 does not "define[] a specific timeframe in which a party calling an expert . . . must . . . provide the discovery materials[.]" ***Id***. The absence of a specific notice requirement was not dispositive.

> Contrary to the Superior Court's conclusion, however, we disagree that the lack of internal notice requirements equates to no notice requirements. Rule 573(d) imposes a continuing duty to disclose "additional evidence, material, or witnesses[,] subject to discovery or inspection[.]" Moreover, this Court has repeatedly emphasized that the purpose of Rule 573 is to "permit parties in criminal matters to be prepared for trial" and that "trial by ambush

is contrary to the spirit and letter of those rules and will not be condoned." **Commonwealth v. Appel**, . . . 689 A.2d 891, 907 ([Pa.] 1997) (*reversed on other grounds*) (citing **Commonwealth v. Shelton**, . . . 640 A.2d 892, 895 ([Pa.] 1994)). Thus, Rule 573 required the Commonwealth to promptly disclose its intent to call an expert under [the statute], as well as any expert reports in its possession.

*Id.* at 335 (OISA) (Mundy, J.) (footnote omitted).

It was "unclear exactly when the Commonwealth came into possession of [the expert's] letter, only that it was dated May 31, 2019." *Id*. at 336. But even if the Commonwealth had obtained the letter on June 3, 2019 — the day before trial — and immediately turned it over, the disclosure was untimely since "the Commonwealth was presumably aware of its intention to call [its expert] and that such a letter was forthcoming." *Id*. Moreover, the Commonwealth "failed to advance any support or reasoning in defense of its eleventh-hour notice or why it did not relay the information later provided in a timely manner." *Id.*

Justice Donohue, joined by Justices Wecht and Dougherty, penned an opinion in support of reversal ("OISR"). Justice Donohue disagreed with the conclusion that the document outlining the expert's proposed testimony qualified as an expert report and concluded that "the trial court abused its discretion by failing to grant Dunn's Motion to Compel a more detailed expert report in compliance with Rule 573(B)(2)(b)." *Id*. at 344 (OISR) (Donohue, J.). Justice Donohue also "agree[d] with the OISA that the Commonwealth violated its duty to promptly disclose under Rule 573[.]" *Id*. Justice Wecht,

joined by Justices Donohue and Dougherty, wrote a separate opinion in support of reversal, largely addressing the remedy.

Therefore, all six Justices agreed that immediately providing an expert report upon its receipt does not preclude discovery sanctions. As Justice Mundy stated, "Rule 573 required the Commonwealth to promptly disclose its intent to call an expert . . . as well as any expert reports in its possession." *Id*. at 335 (OISA) (Mundy, J.). We acknowledge the general rule that *per curiam* orders affirming the order of the inferior tribunal are not binding beyond the parties to the dispute. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. Super. 2015) ("When a judgment of sentence is affirmed by an equally divided court . . . no precedent is established and the holding is not binding on other cases."). Nevertheless, we hold, in accordance with the unanimous conclusion of the Supreme Court justices who addressed the issue in *Dunn*, that the Commonwealth's disclosure in this matter of an expert report on the weekend before trial violated Rule 573.

As in *Dunn*, the Commonwealth obviously intended to determine whether Rodriguez's fingerprints appeared on items seized from the home. Yet, as testified to by one of the investigating police officers, the Commonwealth did not ask for any testing until one week before trial. *See* N.T. (Trial), Vol. I, at 269. The only real distinction between this case and *Dunn* is that the Commonwealth did not definitively intend to call an expert

in this case until the fingerprint analysis generated a match.[7]  However, the

purpose of the discovery rules would be greatly undermined if the

Commonwealth could simply wait until close to trial to test evidence and then

ambush the defendant with the results.  "The purpose of the discovery rules

is to permit the parties in a criminal matter to be prepared for trial.  Trial by

ambush is contrary to the spirit and letter of those rules and cannot be

condoned."  *Commonwealth v. Moose*, 602 A.2d 1265, 1274 (Pa. 1992).

Affirming the trial court's determination that no discovery violation occurred

would permit, if not encourage, prosecutors to impair a defendant's

preparation for trial by manipulating the generation of expert evidence.  We

therefore conclude that the trial court erred as a matter of law by determining

the Commonwealth did not violate Rule 573 simply because it immediately

turned over the expert report after its generation.[8]

_____

[7] We cannot fathom that our Supreme Court would have accepted a representation by the Commonwealth in *Dunn* that it realized on the eve of trial that expert testimony would have been useful.  Comparably, the Commonwealth in this case knew, or at the least should have known, that whether Rodriguez's fingerprints were present was a topic that likely would have come up at trial.  If the Commonwealth had not requested the fingerprint analysis, Rodriguez would presumably have made that point on cross-examination or in his closing statement.

[8] We confine our analysis to the instant facts and do not address scenarios such as where a civilian witness supplies material to the Commonwealth shortly before trial or where the Commonwealth requests certain testing far in advance in trial, but the police failed to complete the testing in a timely fashion.  As illustrated by *Commonwealth v. Dodd*, ____ A.3d ____, 701 MDA 2024 (Pa. Super. filed June 11, 2025), the analysis may differ in those situations.  In *Dodd*, the trial court excluded photographs and text messages
*(Footnote Continued Next Page)*

We reiterate that the Commonwealth's witness testified that fingerprint processing was not requested until one week before trial. Rodriguez was arrested in January of 2023, and the Commonwealth filed its criminal information in March. The trial started approximately ten months later. The Commonwealth offered no explanation for why it waited so long to follow up on whether fingerprints linked Rodriguez to the items, nor did it offer any argument at the pre-trial motion *in limine* for the delay. We recognize that innocent reasons may explain its inaction.[9] However, if the evidence were crucial to its case, the Commonwealth could have requested a postponement in advance of trial if needed. Rule of Criminal Procedure 600 affords the

_____

supplied by the victim of domestic abuse to the prosecution approximately one week before trial. The trial court determined that the Commonwealth violated its due diligence obligations because it could have discovered the evidence much sooner by asking the victim relevant questions. We held that "Rule 573 . . . does not, itself, impose a duty of due diligence on the part of the Commonwealth." *Id*. at 8. We thus concluded that the Commonwealth fulfilled its obligations by promptly turning over the material.

We need not discuss ***Dodd*** at length as expert reports and testimony present materially different considerations as addressed elsewhere within this decision. Furthermore, ***Dodd*** addressed the remedy of exclusion for a discovery violation and opined that "the overwhelming majority of authority throughout the Commonwealth provides that a continuance, not exclusion of relevant evidence, serves as the proper remedy" for late disclosures. *Id*. at 9. Thus, the Court in ***Dodd*** did not address a case where the trial court forced the defendant to proceed to trial without any opportunity to investigate or examine the material.

[9] The officer who conducted the fingerprint analysis stated that the department had "a backlog of evidence" for processing. N.T. (Trial), Vol. I, at 269. Nevertheless, this explanation is in tension with the fact the testing was completed shortly after the Commonwealth's request. ***See id***.

- 15 -

Commonwealth a full calendar year to marshal its evidence and bring the defendant to trial. *Cf. Commonwealth v. Mills*, 162 A.3d 323, 324 (Pa. 2017) (holding that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600").

We now turn to the question of remedy. We readily dispose on waiver grounds Rodriguez's claim that the failure to exclude the evidence requires this Court to discharge his convictions and bar retrial. As Rodriguez himself recognizes, his assertion that the inclusion of this evidence and the associated expert testimony caused an unfair trial and warrants a bar on further proceedings relies on double jeopardy concepts. *See* Rodriguez's Brief at 15 (requesting that this Court "vacate his convictions, and hold that double jeopardy bars retrial"). Our Supreme Court has extended "double jeopardy protections under the Pennsylvania Constitution . . . to 'misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result.'" *Commonwealth v. Kujawa*, 332 A.3d 835, 839–40 (Pa. Super. 2025) (quoting *Commonwealth v. Johnson*, 231 A.3d 807, 826 (Pa. 2020)).

However, Rodriguez did not ask the trial court to sanction the Commonwealth on the basis that it intended to deprive him of his right to a fair trial. Presently, he claims that the "Commonwealth waited until the eleventh hour to request this testing. This action was intentionally and recklessly undertaken to deprive [Rodriguez] of a fair trial." Rodriguez's Brief

at 21–22. He could have raised this allegation with the trial court, which in turn would have permitted credibility and factual findings regarding the prosecutor's conduct.[10] *See, e.g.*, *Commonwealth v Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (reversing trial court order dismissing charges for discovery violation because "it is clear from the record that the Commonwealth's violation was not intended to provoke Smith into seeking a mistrial or deprive him of a fair trial"). Because he did not argue this theory to the trial court, he has waived it for appellate review. *See Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("[T]his Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.").

We now turn to the remaining issue of whether Rodriguez is entitled to a new trial due to the trial court's failure to grant a continuance. Notably, our precedents place an initial burden on Rodriguez, as "a defendant seeking relief from a discovery violation must demonstrate prejudice." *Counterman*, 719 A.2d at 298. "[G]eneralized allegations of prejudice" do not suffice. *Id*. In *Commonwealth v. Jones*, 668 A.2d 491 (Pa. 1995), the appellant sought to exclude evidence on the basis the Commonwealth supplied it during trial in

---

[10] The **Johnson** holding would authorize Rodriguez to pursue a claim that retrial should be barred due to the purported intentional or reckless failure to timely test the fingerprint evidence if he persuaded this Court to award a new trial. Rodriguez does not explain, however, how this Court could impose that remedy on appeal from a claim that sought a sanction following the untimely disclosure of mandatory discovery.

violation of its discovery obligations. The record was not clear when the Commonwealth turned over the evidence to the defense. However, our Supreme Court held that "even if such a discovery violation occurred, it does not automatically entitle appellant to a new trial." **Id**. at 513. The defendant in **Jones** did not establish his entitlement to relief, as he "fail[ed] to develop how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure of" the evidence. **Id**.

Based upon our review, we conclude that Rodriguez is not entitled to relief. We recognize that "[i]n many cases, ordering a continuance will be an adequate remedy. This will be so where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." **Commonwealth v. Johnson**, 456 A.2d 988, 993 (Pa. Super. 1983). While it is without doubt that Rodriguez was surprised by the late disclosure of the fingerprint match, he has not demonstrated how he would have used additional time provided by a continuance to prepare for trial. Instead, Rodriguez offers only a generalized allegation that he was unable to "properly prepare for trial in light of the expert's findings." Rodriguez's Brief at 14. Absent from Rodriguez's appellate argument is any contention that the Commonwealth's discovery violation prevented him from investigating the fingerprint evidence or retaining a rebuttal expert.[11]

---

[11] At the pre-trial hearing, Rodriguez stated that he had "a former state trooper" available for review of the fingerprint evidence. N.T. (Trial), Vol. I,
*(Footnote Continued Next Page)*

- 18 -

Rodriguez further claims that the fingerprint evidence "completely derailed [his] defense that the guns and drugs belonged to convicted co-defendants Putt and Lewis, both of whom had free range of the house given their personal possessions were found in every place narcotics and firearms were recovered." *Id*. at 21. This is simply a complaint that the fingerprint evidence was powerfully incriminating. Rodriguez does not point to any deficiency in the testimony given by the Commonwealth's expert or otherwise suggest that the methodology employed was unreliable. That he has failed to show on appeal how the expert testimony was flawed or ripe for cross-examination underscores that his complaint is the existence of the evidence, not the lateness of the disclosure. Accordingly, because Rodriquez has "fail[ed] to develop how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the . . . late disclosure of" the fingerprint evidence, we conclude that Rodriguez has not demonstrated prejudice based upon the trial court's denial of a continuance. *Jones*, 668 A.2d at 513.

Finally, we briefly address our Supreme Court's discussion in *Dunn* of whether the Commonwealth's late disclosure of the expert report required a new trial. Justice Mundy, joined by Justice Brobson, found that Dunn's

---

at 9. The trial court asked if the retired trooper was available to look at the fingerprint cards, and Rodriguez responded, "That . . . would make a lot of sense. That could be something that I could try to do today." *Id*. at 10. It is not clear if Rodriguez consulted with the potential expert during or after trial, but he has not raised any argument relating to this potential expert in this appeal.

arguments — that the "last-minute notice prevented him from conducting independent research, developing a comprehensive cross-examination, [and] making a knowing and intelligent decision about whether to hire his own expert" — were "broad and non-specific" and thus "insufficient to demonstrate the degree of prejudice necessary to warrant a new trial." *Dunn*, 300 A.3d at 338 (OISA) (Mundy, J.). Chief Justice Todd wrote separately to express her view that Dunn, "having gone to trial and having seen [the expert's] actual testimony," failed to "describe, in any detail, what he would have done differently had he been given proper notice and what he viewed as a compliant report." *Id*. at 325 (OISA) (Todd, C.J.). While Dunn included arguments along those lines in his reply brief, "that effort was too late." *Id*.

Justice Donohue's OISR agreed that the appellant must establish prejudice but noted that the denial of a fair trial is one of "several different modes of ascertaining whether prejudice resulting from discovery violations is sufficient to warrant relief." *Id*. at 350 n.13 (OISR) (Donohue, J.). She concluded that Dunn met that standard because the Commonwealth's late disclosure "invariably affected trial counsel's strategy" and deprived Dunn "of the opportunity to make a reasonable, calculated decision" to retain his own expert to "aid the defense in minimizing any negative effects [the Commonwealth expert's] testimony would have in this clash-of-credibility case." *Id*. at 351. Justice Wecht, writing separately in support of reversal, disagreed with his colleagues that Dunn's allegations of prejudice were insufficient, noting that his counsel had identified a potential rebuttal expert

and discovered numerous inconsistencies between the Commonwealth expert's testimony and the medical research on which she relied. *See id*. at 356 (OISR) (Wecht, J.).

While the remedial analysis in *Dunn* is not precedential, the various opinions support our conclusion that no relief is due here. Rodriguez has failed to offer any concrete explanation of how the late nature of the disclosure prejudiced him or what he would have done differently if the trial court had granted his request for a continuance. Unlike the appellant in *Dunn*, Rodriguez has not identified any competing expert testimony he would have presented or pointed to any flaw in the Commonwealth's expert testimony. In that regard, we note that the *Dunn* case involved a credibility battle whereas the expert testimony here was of a binary nature: the fingerprints found on the items either matched Rodriguez's prints or they did not. Even with the benefit of hindsight, Rodriguez has not articulated any reason to think that the forensic testing conducted by the Commonwealth was unreliable or questionable or that an earlier disclosure would have changed his strategy.

We therefore conclude that Rodriquez has failed to meet his burden of demonstrating prejudice. No relief is due on his appellate issues, and we affirm his judgment of sentence.[12]

Judgment of sentence affirmed.

---

[12] Although we are sympathetic with Rodriguez's claim regarding the Commonwealth's late disclosure of the fingerprint evidence, we are bound by the relevant law and must conclude that his appellate issues merit no relief.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/05/2025